IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA

Plaintiff

vs

1) JOEL RIVERA-ALEJANDRO
2) CARLOS RIVERA-ALEJANDRO
3) ALEXIS RIVERA-ALEJANDRO
7) CARLOS E. RIVERA-RIVERA
14) JUAN RIVERA-GEORGE
19) SUANETTE RAMOS-GONZALEZ
47) IDALIA MALDONADO-PEÑA
49) DOLORES ALEJANDRO

Defendants

CRIMINAL 09-0165CCC

**RULING ON PROFFERED TESTIMONY OF JAIME RIVERA-NIEVES
REGARDING HIS 2008 ENCOUNTER AND THREAT TO HIM**

On January 12, 2015, the following testimony[1] was proffered outside the presence of the jury by government witness Jaime Rivera-Nieves:

> Witness Rivera-Nieves recognized the photo of a person known as "Bebe Kia" who was born and raised in Villa Margarita ward,[2] whom he knew and with whom he had worked in painting and landscaping. In 2008, "Alex," "Rambo," "Jun Jun," "Buby," "Abimael" and "Carlitos" went by his mother's house at Girasol Street in Villa Margarita where Alex approached Rivera-Nieves and told him to contact "Bebe Kia" and Josué, his brother, on the phone. The witness responded that he did not have their phone, that he did not communicate with them and that he did not have a cellphone with him. Following this, Alex checked his pockets, the group surrounded him, and pinned him against a car that was behind him. Alex told him to speak the truth, that if he had any communication with them to tell him, to which the witness answered that he did not have any and inquired as to what was happening. Alex told him that they are at war and that if he finds out that Rivera-Nieves is taking information to Bebé Kia and Josué, like the type of car they had and where they hung out, they were going to kill him.

The United States argued in open court that this testimony is proof in support of paragraph 19 of the Indictment which charges that it was part of the

---

[1]This is a summary of such testimony.

[2]Witness Rivera-Nieves had previously testified before the jury that he was born and raised in the Villa Margarita ward.

CRIMINAL 09-0165CCC                2

manner and means of the conspiracy that co-conspirators would threaten to use violence, force and intimidation in order to gain or maintain control of the drug trafficking operations in Villa Margarita ward and the Los Claveles housing project.   The government also raised that the evidence was relevant to paragraph 12 of the Indictment which charges that it was part of the manner and means of the conspiracy that defendants would possess, carry, brandish and use firearms to protect themselves, the drugs, the drug trafficking proceeds and the operation of the drug point from other drug trafficking organizations.  It described the proffered testimony as a continuation of the testimony already given by government witness Jaime López-Canales that [1] Joel Rivera-Alejandro admitted to him that he was the one who shot at Bebe Kia's residence when López-Canales saw bullet holes in that house.  It also proffered that Miguel Angel-Delgado, a/k/a Kiki, an indicted co-conspirator and future witness, would testify that at one point Bebé Kia had the $10 cocaine baggies at Joel's drug point but co-conspirator Abimael Serrano-Figueroa, one of the indicted co-conspirators who visited Rivera-Nieves the day that [3] Alexis Rivera-Alejandro allegedly threatened him, went to Kiki and told him not to sell Bebe Kia's $10 cocaine anymore because Abimael's $10 cocaine was going to be sold at the drug point.

The defendants were granted until 8:30 AM on January 13, 2015 to file written objections to the proffered testimony of Jaime Rivera-Nieves.  The only defendant who objected was [3] Alexis Rivera-Alejandro (**docket entry 3274**),[3] followed by the government's response at docket entry 3278.  The Court notes that the government included at paragraph 7 the period from "in or about 2007

---

[3]The other defendants joined the motion without any additional arguments to those raised by [3] Alexis Rivera-Alejandro.  See **docket entries 3275 and 3279**.

CRIMINAL 09-0165CCC                3

to 2008" as that in which Abimael demanded that Bebe Kia's $10 cocaine not be sold at the drug point.

The following testimonial evidence has been examined as part of the Court's determination of the evidentiary issue raised regarding the proffered testimony of Jaime Rivera-Nieves summarized above, to wit:  (1) Sargent Luis Daniel Rivera-Vélez' July 30, 2014 testimony on direct related to that portion of Exhibit 8, a video that was played to the jury at 3 minutes 7 seconds and at 4 minutes 22 seconds and as to which Sargent Rivera-Vélez independently testified about, (2) testimony of government witness Jaime López-Canales at the end of his direct examination on December 3, 2014 regarding [1] Joel Rivera-Alejandro's alleged admission to him taking responsibility for having shot at Bebé Kia's house, (3) the proffered testimony of government witness Jaime Rivera-Nieves regarding having been threatened by [3] Alexis Rivera-Alejandro in 2008 and (4) the proffered testimony of future witness Miguel Angel Vega-Delgado, a/k/a "Kiki," regarding indicted co-conspirator [6] Abimael Serrano-Figueroa having demanded in or about 2007-2008 that Bebe Kia's $10 cocaine not be sold at the drug point any longer because his $10 cocaine was to be sold.

Based on the above, the testimonial evidence already presented by the United States at trial is the following:

(1) The audio portion of the video admitted as Exhibit 8 for the government (transcript of the same, Exhibit 9) in which person is heard yelling "hey snitch, you're going to die," as to which Sargent Rivera-Vélez testified that once Joel got to the area of the curve he looks towards Amapola Street to the interior, placed his hands cupping mouth and yelled those words, and that Joel "yelled in the direction of Amapola Street which reaches the intersection with

CRIMINAL 09-0165CCC                4

Girasol Street, that there are several residences between Amapola and Girasol Street and one of them is Bebe Kia's located in that area."

(2) Jaime López-Canales' December 3, 2014 testimony on direct regarding that: he knew a person by the name of Bebe Kia who lived after you go by the curve of Amapola Street where drugs were sold, the first turn to your left, that he saw Bebe Kia's home with a lot of bullet holes spread all over the wall, that after that shoot out Joel confirmed to López-Canales that it had been him, that he had been involved in it because they had a war, that he sprayed that house and another house that Bebe Kia had.

(3) Jaime Rivera-Nieves' testimony, as proffered by the government, on death threat made by [3] Alexis Rivera-Alejandro should he inform Bebe Kia about their movements such as where they hung out and what car they used. This threat was, according to the proffered testimony, made at the time that Rivera-Nieves says he was surrounded by Alex and other indicted co-conspirators in the year 2008.

(4) The proffered testimony of future witness Miguel Angel Vega-Delgado known as Kiki, an indicted co-conspirator, regarding Abimael Serrano, another indicted co-conspirator, to withdraw Bebe Kia's $10 cocaine from the drug point sales.

All of these references to testimonial evidence, already given or to come, center on the person known as Bebe Kia who has been mentioned since the first government witness testified.  Although there is a ruling that the government is not to make any mention, direct or indirect, as to Bebe Kia's murder, as the above narrative reflects Bebe Kia has been the subject of testimony in specific factual contexts.  His name has also been brought up in cross-examination by defense counsel.  In sum, the relationship between Bebe Kia and some of the defendants is not a topic that has recently been brought

CRIMINAL 09-0165CCC                    5

up by way of the proffered testimony of Jaime Rivera-Nieves that has been objected.  This testimony does not qualify as Fed. R. 404(b) evidence for it is factual testimony in support of the allegations of the Indictment, particularly paragraphs 12 and 19.  Paragraph 12 refers to weapons possessed, carried, brandished or used as a manner and means of the conspiracy.  There is a reasonable inference flowing from evidence of a threat to kill a former co-conspirator should he give information of whereabouts or vehicles that compromised the safety of other alleged participants that weapons would be used to protect them from such perils.  The relevance to paragraph 19 of the Indictment is directly tied to the element of control of drug operations.  It is there alleged that as part of the manner and means of the conspiracy co-conspirators would threaten to use violence and intimidate in order to maintain control of their drug trafficking operations.  Whether or not Rivera-Nieves' testimony on the threat to his life is credible to the jury is not a factor in the Court's admissibility determination.  However, the context in which the threat was allegedly made points to a means of control over disclosing information to a rival that, again, could represent a danger to participants of the drug activity.

Based on the evidence already provided and the testimony proffered, the objections raised by the defendants, supported by written objections filed by defendant [3] Alexis Rivera-Alejandro at docket entry 3274, are OVERRULED.

SO ORDERED.

At San Juan, Puerto Rico, on January 13, 2015.

S/CARMEN CONSUELO CEREZO
United States District Judge